UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SHANTRICE JACKSON            CIVIL ACTION

VERSUS            NUMBER 11-268-JJB-DLD

STRATEGIC RESTAURANTS
ACQUISITION CO., LLC d/b/a
BURGER KING

### ORDER

This matter is before the court on defendant's motion to compel discovery. (rec.doc. 8) The motion is opposed.

*Background*

Plaintiff filed this suit pursuant to the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) ("Title VII"), *et.seq*, alleging "severe and/or pervasive supervisory sexual harassment," and "constructive discharge." (rec.doc. 8) In support of these claims, plaintiff contended that she was a shift manager at one location of Burger King, and was subjected to "unwanted sexual comments, joking, and sexual advances" by the Restaurant Manager between July 10, 2009, through September 1, 2009. She stated that she reported the behavior to other shift managers, but the harassment did not stop. She then was transferred to a second location on October 15, 2009, where "she was subjected to employee questions and negative comments about her schedule and her mental status deteriorated further." Thereafter, she was transferred to a third location on December 15, 2009, where she contended she did not have her own keys to the store or the access code for the computer, and there were not enough employees assigned on her shift. She also alleged that a manager of another location blocked operational changes she was to

implement and re-assigned her employees to his location. While at this third location, she reported her relief manager for reporting to work early and smoking marijuana, and when she did not receive a response to her report, she gave a two-week notice of resignation. At this time, it appears that a meeting was held, but no changes were made, and she thereafter resigned on January 20, 2010. Plaintiff seeks relief in the form of back and front pay, fringe benefits, damages for emotional distress, and punitive damages. Id. Further, in the status report filed with this court, plaintiff alleges that she has "suffered heart problems, HBP [high blood pressure], and panic attacks." (rec.doc. 6)

***The Instant Motion to Compel***

Defendant's motion concerns two matters: 1) the completion of plaintiff's deposition testimony, which has been shortened twice due to plaintiff's alleged medical condition; and 2) the failure to produce two settlement agreements executed between plaintiff and others relating to recent automobile accidents.

***Issue 1 - Completion of Plaintiff's Deposition***

Defendant scheduled plaintiff's deposition for January 23, 2012, at 9:30 a.m. in the office of plaintiff's counsel in Metairie, Louisiana. Defendant began questioning plaintiff about her background and employment; however, as a courtesy to plaintiff's counsel, the deposition was stopped briefly to allow plaintiff's counsel to attend to another matter. When the deposition resumed a few minutes later, defendant was advised by plaintiff's counsel that plaintiff had taken anti-anxiety medication during the break that would cause her to be asleep "from the time she ordinarily takes it at 8:30 until the kids come home from school," and that failure to take it would make her "begin to feel faint. So either way, she can't

-2-

Case 3:11-cv-00268-JJB-DLD   Document 13   04/26/12   Page 2 of 7

continue." (rec.doc. 8, rec.doc. 8-3, pgs 4-5) The parties agreed to reconvene plaintiff's deposition in Baton Rouge, Louisiana, on February 24, 2012, at 9:30 a.m. to accommodate plaintiff.

At the second deposition, defendant asked plaintiff if she had taken any medications that morning that would interfere with her ability to give competent testimony, and plaintiff replied that she had not. However, when asked when she would next need to take any medication, plaintiff responded with "9:30," which was the start time for the second deposition. This time, plaintiff indicated she would be "incapacitated for a period of 45 minutes to an hour after the drugs are taken," but she advised she was mentally competent of proceeding without taking the medication, and the deposition moved forward. (rec.doc. 8-1, pg 2) After a series of questions relating to her work history with defendant, the questioning turned to the locations and events relating to the alleged harassment incidents which are the subject of this lawsuit. Before defendant could question plaintiff about the alleged harassment, however, plaintiff "began to breathe heavily," and "began spitting into" a wastebasket she held in her lap. Plaintiff then indicated she could not continue testifying and again took medication during the break which left her incapacitated. Id, at pg 3.

Defendant now seeks to compel plaintiff to either complete her deposition, or face dismissal of her suit for her failure to do so, under either Rule 37(b) or Rule 41(b) of the Federal Rules of Civil Procedure. Defendant argues that plaintiff's testimony is that the medication renders her incapacitated for an hour, and that the deposition can be reset to occur after the temporary incapacity has passed, but that a court order is necessary to insure plaintiff's compliance in the completion of her deposition.

In response, plaintiff clarified that it was "not strictly, or even largely," a matter of the timing of her medication that stopped both her depositions prematurely; it was more her perception that the defendant's questions would have her address "the subject of the alleged perpetrator," which in turn, caused her flashbacks and made her sick. Plaintiff further explained that following the second deposition, she visited her doctors at Earl K. Long to discuss her issues with the deposition, where she learned that they would not continue to treat her and referred her to the "Capital Area facility." Plaintiff requests that this court give plaintiff and her counsel "time to establish a relation with Capital Area and determine what, if anything, might be done to enable plaintiff to complete her deposition," and asks that the scheduling order be vacated. (rec.doc. 9)

In reply to plaintiff's opposition, defendant responds that it has been almost three years since the alleged incidents occurred, one year since the filing of the lawsuit, and more than 60 days since the failed deposition, which is enough time to have assessed plaintiff's ability to testify and proceed with her suit. Defendant contends that allowing plaintiff an additional 30 days provides enough time for plaintiff to determine whether or not she is medically able to participate in her own litigation. Additionally, the delays in being able to take plaintiff's deposition will result in the resetting of the current scheduling deadlines, and defendant requests that the deadlines be reset following the completion of plaintiff's deposition.

As the parties are aware, the court has broad discretion in discovery matters. Here, plaintiff filed suit alleging "severe and/or pervasive supervisory sexual harassment," and "constructive discharge" occurring at three different locations. (rec.doc. 8) Plaintiff's testimony would seem to be indispensable, as a practical matter, to proving her case,

-4-

absent defendant's stipulation to liability and damages, which seems unlikely. It likewise is clear that plaintiff cannot refuse to be deposed, regardless of the reason, and then expect to be allowed to present testimony at trial. Here, plaintiff argues basically that she suffers from panic attacks when faced with revisiting her allegations of harassment (which make it impossible to function), which in turn necessitates taking anti-anxiety medications, also which make it impossible to function. Plaintiff obviously finds herself on the horns of a dilemma that only she can resolve.

According to counsel for plaintiff, plaintiff was to visit Capital Area on March 19, 2012, to assess her condition, in particular the feasibility of moving forward with the litigation. Plaintiff should be able either to conclude her deposition or to determine that she will not testify on her own behalf in this litigation within the next 60 days. The court therefore will order that plaintiff appear for her deposition within the next 60 days or notify defendant that she is either unwilling or medically unable to testify in this matter. Further, the court will stay the current deadlines, all of which will be reset after the issue of plaintiff's continued participation in the litigation is resolved.

***Issue 2 - The Production of the Settlement Agreements***

Plaintiff testified that she filed two lawsuits relating to automobile accidents, one of which was settled in 2009, and one of which is still pending. When defendant attempted to question plaintiff regarding the amount she received in settlement of her claims, plaintiff's counsel objected and advised plaintiff not to answer the question because he thought at that time that the settlements might be confidential. Although plaintiff later determined that the agreements were not confidential, she refused to produce the agreements, stating that "they seem discoverable only when related to the pending litigation." (rec.doc. 8-1, pg. 7)

Defendant contends the settlement agreements "bear heavily" on plaintiff's credibility and the existence of any physical, mental, or emotional conditions plaintiff may have suffered prior to or after the alleged harassment claims raised in this lawsuit, especially as plaintiff has claimed she has sustained mental and emotional damages as of result of the alleged harassment.

Settlement agreements are discoverable under Rule 26(b)(1) if the settlement information is relevant to defenses such as mitigation, waiver, and estoppel. *Glaze v. G&G Marine, Inc.*, 1997 WL 20738 at *1 (E.D. La. January 16, 1997). *See also, Collins v. Coastline Constr.*, 1992 WL 125382 at *2 (E.D. La. May 25, 1992) and *Koch Industries v. Columbia Gas Transmission Corp.*, 1990 WL 72789 (E.D. La. May 29, 1990). While the two settlement agreements appear on the surface to have marginal relevance to the pending litigation, they meet, albeit barely, the threshold requirement that they be relevant to a claim or defense, or may lead to relevant information. The settlement agreements therefore must be produced.

Accordingly,

**IT IS ORDERED** that the motion to compel discovery (rec.doc. 8) be **GRANTED** as follows:

1. Plaintiff shall appear for a mutually scheduled deposition within 60 days of the date of this order or notify defendant that plaintiff is either unwilling or medically unable to testify in this matter. In the event plaintiff fails either to appear or to fully participate in a rescheduled deposition, the court shall issue further appropriate orders upon the motion of either party.

2. Plaintiff shall produce the two settlement agreements within 14 days of the date of this Order.

3. All scheduling deadlines are **STAYED** until further Order of this court.

Case 3:11-cv-00268-JJB-DLD   Document 13   04/26/12   Page 6 of 7

4. In all other respects, the motion is denied.

**IT IS FURTHER ORDERED** that a telephone status conference is **SET** for **July 12, 2012, at 1:00 p.m.** Counsel for defendant shall initiate the conference call to chambers at (225) 389-3602.

Signed in Baton Rouge, Louisiana, on April 26, 2012.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**